UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

LINDA LOYKO, *Administrator of the Estate of* :
*MYRON LOYKO, Deceased*,                      :
                              Plaintiff,       :
                                               :
                    v.                         :        No.   5:24-cv-0360
                                               :
OLD ORCHARD HEALTH CARE CENTER-                :
EASTON, PA, LLC, et al.,                       :
                              Defendants.      :
_____

**O P I N I O N**

**Defendants' Motion to Compel Arbitration, ECF No. 7 – Granted in part, Denied in Part**

**Joseph F. Leeson, Jr.**                                    **March 13, 2024**
**United States District Judge**

## I.     INTRODUCTION

In December of 2021, Myron Loyko passed away while in the care of Defendants.  This

lawsuit asserts professional negligence, a survival action, and wrongful death arising out of his

ailments and ultimate death.  Defendants seek to compel arbitration of this matter pursuant to an

agreement.  For the reasons outlined below, the Court will compel the claims brought by

Myron's estate against Old Orchard Health Care and ProMedica Health while staying the others.

## II.    BACKGROUND

Old Orchard Health Care Center – Easton PA, LLC, is a healthcare provider who owns

and operates Manor Care Health Services – Easton ("MCHE").  *See* Compl. ECF No. 1, ¶¶ 1, 10.

In March of 2021, Myron Loyko was admitted to MCHE.  *Id.* ¶ 10.  Unfortunately, on December

2, 2021, Myron's health began to deteriorate.  *Id.* ¶ 11.  The Complaint avers a host of ailments

including but not limited to confusion, testicular pain, shortness of breath, and a kidney stone.

*Id.*  On December 4, 2021, Myron entered the emergency department of St. Luke's Hospital in a

septic state.  *Id.* ¶ 12.  He had a urinary tract infection, an acute kidney injury, and gangrene in his left glute.  *Id.*  While in the care of Defendants' facility, Myron suffered severe wounds to his perineum, left and right buttock, scrotum, infections, sepsis, and gangrene.  *Id.* ¶ 13.  Tragically, he passed on December 13, 2021.  *Id.*

Plaintiff alleges that Myron's injuries and subsequent death were caused by Defendants' neglect.  *Id.* ¶ 14.  Plaintiff alleges a multiple negligent actions and inactions.  Some take issue with Defendants' administration such as a failure to maintain adequate staffing levels, properly train and/or supervise employees on proper patient care, and implement and enforce policies/procedures.  *See id.* ¶¶ 21(a)-(b), (d).  Others take issue with Myron's treatment, including a failure to perform skin checks, complete wound treatment, and inspect his body at reasonable intervals.  *Id*. ¶¶ (h)-(j).  As a result of these and other acts of negligence, Myron developed several physical and mental conditions which required substantial medical attention and expenses.  *Id.* ¶ 24.

Plaintiff now brings five claims: 1) in Count I, Plaintiff brings a claim for professional negligence against Defendant Old Orchard; 2) in Count II, Plaintiff brings a claim for professional negligence against Defendant ProMedica Health; 3) in Count III, Plaintiff brings a claim for professional negligence against Defendant ProMedica Senior Care; 4) in Count IV, Plaintiff brings a survival action against all Defendants; and 5) in Count V, Plaintiff brings a wrongful death action.

On February 1, 2024, Defendants filed the instant Motion to Compel Arbitration and, in the alternative, Motion to Dismiss.  *See* ECF No. 7.  Defendants attached a Voluntary Arbitration Agreement ("Agreement") to its Motion.  *See id*., Ex. B.  The Agreement contains the following relevant clauses:

> This is a Voluntary Arbitration Agreement ("Agreement") between:
>> The "Center": Old Orchard Health Care Center-Easton PA, LLC doing business as Old Orchard Health Care Center-Easton PA, LLC;
>> The "Patient": Myron Loyko; and
>> The "Patient's Representative" (if any): Linda Loyko

. . .

> a. "Center" includes the Center's licensed operator, governing body, officers, directors, members, shareholders, administrator, employees, managers, agents, and any parent company, subsidiary, or affiliates, including but not limited to ProMedica Health System, Inc. and any of its affiliates, and any person or entity alleged to be responsible for the Center's activities.

. . .

> **6.**    **Arbitrator's Authority.**  The Arbitrator has sole jurisdiction to resolve all disputes among the parties, including wrongful death claims and any disputes about the signing, validity, enforceability, scope, applicability, interpretation, severability and waiver of this Agreement or the competency of the parties.

*Id.*  The Agreement is dated March 12, 2021, and bears the signature of Lynda Loyko as power of attorney.  Defendants also attached a document purportedly showing that "ProMedica Senior Care" is a registered trademark and not a legal entity.  *See id.*, Ex. D.  On February 21, 2024, Plaintiff filed a response in opposition to the motions.  *See* ECF No. 12.  On February 28, 2024, Defendants filed a reply.  *See* ECF No. 13.  The matter is now fully briefed and ready for disposition.  For the reasons that follow, the Motion to Compel is granted in part and denied in part.

## III.    LEGAL STANDARDS

### A.    Motion to Compel Arbitration – Review of Applicable Law

"It is well established that the Federal Arbitration Act (FAA), reflects a strong federal policy in favor of the resolution of disputes through arbitration."  *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (internal quotations omitted).  "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an

agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement."
*Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 522 (3d Cir. 2009).

"However, when an arbitration provision, by 'clear and unmistakable evidence,' contains a valid delegation clause, the court's inquiry is limited to the first step: determining whether a valid agreement to arbitrate exists." *Coulter v. Experian Info. Sols., Inc*., No. 20-cv-1814, 2021 U.S. Dist. LEXIS 35175, at *9 (E.D. Pa. Feb. 25, 2021) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019)); *see also MXM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds,* 974 F.3d 386, 402 (3d Cir. 2020) ("[U]nder section [four] of the [Federal Arbitration Act], courts retain the primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision."). Therefore, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."  *Henry Schein, Inc.*, 139 S. Ct. at 530. Additionally, "unless the party opposing arbitration challenges the delegation provision specifically, the district court must treat it as valid and must enforce it by sending any challenge to the validity of the underlying arbitration agreement to the arbitrator." *MXM Constr. Co.*, 974 F.3d at 399 (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) ("Think of a delegation provision as a mini-arbitration agreement within a broader arbitration agreement within a broader contract, something akin to Russian nesting dolls.") (cleaned up).

**B.    Motion to Compel Arbitration – Standard of Review – Review of Applicable Law**

In deciding whether to compel arbitration, a district may either employ the motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) or the motion for summary judgment standard under Federal Rule of Civil Procedure 56.  *See MacDonald v. Unisys Corp.*, 951 F. Supp. 2d 729, 732 (E.D. Pa. 2013).  If arbitrability is not apparent on the face of the

complaint or if the non-moving party has "come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement, . . . the issue should be judged under the Rule 56 standard." *Guidotti v. Legal Helpers Debt Resolution L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotations omitted).  The summary judgment standard is also applied if the parties rely on factual evidence outside the pleadings in arguing that arbitration is or is not appropriate.  *See Smeck v. Comcast Cable Commc'ns Mgmt., LLC*, No. 19-cv-3625-JMY, 2020 U.S. Dist. LEXIS 221526, at *8 (E.D. Pa. Nov. 25, 2020).

Here, arbitrability is not apparent on the face of the complaint and Loyko's motion is therefore evaluated under the summary judgment standard.

### C.     Motion for Summary Judgment under Rule 56 – Review of Applicable Law

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.* at 257.  The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.   *See also Antkowiak v. Taxmasters*, 455 F. App'x 156, 159 (3d Cir. 2011) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000)) ("A party opposing a motion to compel arbitration bears the burden of proving the arbitration clause unenforceable.").   The court must consider the evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007). *See also Antkowiak*, 455 F. App'x at 159 ("All reasonable inferences from the evidence are to be granted to the party opposing arbitration.").

## IV.   ANALYSIS

Plaintiff opposes the Motion to Compel, arguing that: 1) the Court should deny the transfer to arbitration as a matter of efficiency because neither Lynda Loyko, Promedica Health Systems, Inc. nor ProMedica Senior Care are parties to the Agreement; and 2) the Agreement is procedurally unconscionable.  For the following reasons, the Motion is granted in part and denied in part.  First, the Court finds that there is a valid agreement to arbitrate the claims between the Estate of Myron Loyko and Defendants Old Orchard Health Care and ProMedica Health Systems.  Second, the Court finds that those parties made a clear and unmistakable agreement to send any issues of arbitrability to the arbitrator pursuant to the delegation clause. Accordingly, the claims between those parties brought in Counts I, II, and IV will be compelled to arbitration.  However, the Court finds that neither Lynda Loyko nor ProMedica Senior Care are parties to the Agreement.  Counts III and V are stayed.

A.       **Agreement to Arbitrate**

Plaintiff opposes the Motion to Compel, arguing that neither Lynda Loyko, ProMedica Health Systems, nor ProMedica Senior Care entered the Agreement and are thus not parties and cannot be compelled to arbitration.  The effect of this, Plaintiff argues, is that this Court would have to bifurcate the non-party claims and the Court should deny the Motion to Compel "as a matter of efficiency."  Pls.' Resp. at 8, ECF No. 12.  Plaintiff is right in at least one respect; pursuant to the above, the Court retains the authority to decide whether the parties mutually assented to the arbitration agreement.  That inquiry goes to the threshold matter of the agreement's validity.  The Court begins with the applicable law and then addresses each of these parties in turn.

The Court applies state law principles to determine whether a valid agreement to arbitrate was reached.  *See Bacon v. Avis Budget Grp., Inc*., 959 F.3d 590, 600 (3d Cir. 2020).  "[U]nder Pennsylvania law, a valid contract requires that: (1) both parties must manifest an intention to be bound by the agreement; (2) the terms of the agreement must be sufficiently definite; and (3) there must be consideration."  *Hudyka v. Sunoco, Inc.*, 474 F. Supp. 2d 712, 716 (E.D. Pa. 2007).  "The party asserting the existence of the valid contract bears the burden of establishing the elements."  *Broomall Operating Co. LP v. Eldridge*, No. CV 20-2168, 2021 WL 3910723, at *5 (E.D. Pa. Aug. 31, 2021).

Here, Linda Loyko is not a party to the agreement and thus cannot be compelled to arbitration.  While she signed the agreement, she did so acting as power of attorney.  Defendants counter by arguing that the Agreement's definition of "patient" includes "the Patient's Representative, the Patient's guardian, attorney-in-fact, agent, sponsor, or any person whose claim is derived through or on behalf of the patient . . . as well as anyone entitled to bring a

wrongful death claim." 2(b).  The Court is unpersuaded and looks to *Pisano v Extendicare Homes* wherein the Pennsylvania Superior Court held that non-signatory wrongful death claimants are not bound by agreements to arbitrate.  *See Pisano v. Extendicare Homes, Inc*., 77 A.3d 651, 661 (Pa. Super. 2013).[1]  While the arbitration agreement was purposefully written for broad application, it is still just a contract which cannot bind non-parties.  To hold otherwise would impermissibly "elevate [arbitration agreements] over other forms of contract."  *Rent-A-Ctr., W.,* 561 U.S. at 71 (2010) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395, 404 (1967)).[2]

Promedica Health Systems, however, is plainly a party to the Agreement.  The Agreement is between the "Center" and the "Patient;" the "Center" is defined to "include[] the Center's licensed operator, governing body . . . or affiliates, including but not limited to

---

[1]      However, *Pisano* is distinguishable in one respect.  *Pisano* also concerned a nursing home arbitration ruling.  There, the decedent's daughter executed an arbitration agreement on behalf of her father pursuant to a power of attorney.  *See Pisano*, 77 A.3d at 653.  After the decedent passed, his son filed a wrongful death action on behalf of himself and the decedent's other children.  *Id*.  There, the individual bringing the wrongful death action did not sign the arbitration agreement as the decedent's power of attorney.  *Id*.  Here, Lynda did.  Thus, Defendants argue Lynda is indeed a signatory which would render *Pisano* inapplicable.  The Court disagrees and finds that signing the Agreement as a power of attorney does not subject Lynda to the agreement in her personal capacity.

Even if that were not the case, the beneficiary rights of others preclude compelling the wrongful death action to arbitration.  42 Pa.C.S.A. § 8301(b) creates a class of beneficiaries which includes "the spouse, children or parents of the deceased."  These statutory beneficiaries stand to recover damages in proportion to the laws of intestacy.  *Id*.  Here, Plaintiff has identified two members of the statutory class: Myron's spouse Lynda and his child Melissa Hess.  Even if Lynda were a party to the agreement, Melissa is plainly not.  Thus, the Court holds that it cannot compel the matter to arbitration where a non-signatory beneficiary is not party to the Agreement.

[2]      *Thi of Pennsylvania at Mountainview, LLC v. McLaughlin ex rel. McLaughlin*, No. CIV.A. 14-1616, 2015 WL 2106105 (W.D. Pa. May 6, 2015), which Defendants cite, is inapplicable as it did not concern a wrongful death claim and merely analyzed the mutuality of assent given the party seeking to compel arbitration's lack of signature.

ProMedica Health System, Inc."  Mot. Compel, Ex. B at 2(a).  Accordingly, Myron and

ProMedica Health Systems, formed a valid agreement to arbitrate.

 Next, the Court finds that ProMedica Senior Care is not a party to the Agreement.  On

this matter, Defendants advance two seemingly contradictory arguments.  First, Defendants

argue that ProMedica Senior Care is indeed a party to the Agreement because it falls under the

definition of "Center" which includes "any person or entity alleged to be responsible for the

Center's activities."  *Id*.  Defendants argue that because the Complaint alleged that ProMedica

Senior Care was responsible for the professional negligence found in Count III, it falls within the

ambit of the Agreement.

 In the alternative, Defendants seek to dismiss ProMedica Senior Care by arguing it is

only a tradename/service mark.  As proof, Defendants have attached the trademark registration

of ProMedica Senior Care.  *See* Mot. Compel, Ex. D.  Thus, Defendants argue that to the extent

ProMedica Senior Care is an entity, it is a party to the Agreement.  However, to the extent it is

not, it is not a legal entity capable of being sued under Federal Rule of Civil Procedure 17(b).

*See Sofranko v. Nw. Mut. Life Ins. Co.*, No. CIV.A. 2:06CV1657, 2008 WL 145509 (W.D. Pa.

Jan. 14, 2008) (dismissing a defendant which was a registered service mark because it was not a

legal entity capable of being sued.)  Plaintiff counters only by arguing that dismissal is

premature.

 As noted, when a party moves to compel arbitration, they may rely on matters outside the

pleadings.  *See Smeck*, 2020 U.S. Dist. LEXIS 221526 at * 8.  However, when they do, the Court

applies the summary judgment standard.  *Id*.  Here, Defendants have attached the trademark

registration of ProMedica Senior Care to its Motion.  The Court considers this evidence in

holding ProMedica Senior Care is not a legal entity and thus not a party to the arbitration

agreement.  However, the Court will defer ruling on Defendants' Motion to Dismiss until the arbitration matter is resolved.  At that time, the Court will address the Motion to Dismiss with regard to all remaining parties, including ProMedica Senior Care.

In sum, having exercised its power to determine whether the parties mutually assented to the Agreement, the Court finds that Old Orchard and ProMedica Health Systems are parties to the agreement while Lynda Loyko and ProMedica Senior Care are not.  Finally, Plaintiff's efficiency concerns are unavailing.  As the Third Circuit has noted, "the FAA requires piecemeal litigation where necessary, irrespective of any concomitant decline in judicial efficiency." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 309 (3d Cir. 2009).

### B.       Unconscionability

Next, Plaintiff argues that the Agreement is unenforceable because it is procedurally unconscionable under Pennsylvania contract law.  This argument is foreclosed by the Agreement's delegation clause.  A challenge to the enforceability of a contract (i.e. substantive or procedural unconscionability) is analytically distinct from a challenge to contract formation (i.e. mutual assent).  This is because "contract formation challenges dispute a contract even exists." *Iezzi v. CrossCountry Mortg., LLC,* No. CV 23-2827, 2024 WL 37951, at *5 (E.D. Pa. Jan. 3, 2024).  And Section 4 "of the FAA 'affirmatively requires a court to decide questions about the formation or existence of an arbitration agreement, [including] the element of mutual assent.'" *Carrone v. UnitedHealth Grp. Inc*, No. 20-2742, 2021 WL 3520809, at *1 (3d Cir. Aug. 11, 2021) (quoting *MZM Construction Company*, 974 F.3d at 397-98.)).  As analyzed above, an argument that the parties did not mutually assent "goes straight to court." *Id*.

In contrast, an argument that the 'container contract' is unconscionable "do[es] not dispute a contract exists," but instead argues that the Court "should not *enforce* the contract

based on contract defenses." *Iezzi*, 2024 WL 37951, at *5 (emphasis added).  Here, the

delegation clause expressly reserves questions of enforceability to the arbitrator:

> **Arbitrator's Authority.**  The Arbitrator has sole jurisdiction to resolve all disputes
> among the parties, including wrongful death claims and any disputes about the
> signing, validity, *enforceability*, scope, applicability, interpretation, severability
> and waiver of this Agreement or the competency of the parties.

*See* Mot. Compel, Ex. B. (emphasis added).  To get around this hurdle, Plaintiff would have had

to "challenge[] the validity of the delegation provision itself."  *Carrone*, 2021 WL 3520809 at

*2.

However, Plaintiff did not and without a specific challenge to the delegation provision,

this Court is required to treat the provision as valid and enforce it pursuant to section four of the

Federal Arbitration Act.  In accordance with the above cited clause, the procedural

unconscionability challenge is for the arbitrator to decide, not this Court.  *See Steinberg v.

Capgemini Am., Inc*., No. 22-489, 2022 U.S. Dist. LEXIS 146014, at *8 (E.D. Pa. Aug. 15,

2022) (holding that the plaintiff's "unconscionability objections should be resolved by the

arbitrators" where the plaintiff had "failed to challenge the delegation provision specifically").

Since the Court will compel arbitration as to Counts I, II, and IV and stay Counts III and

V, it will defer ruling on Defendants' Motion to Dismiss until the stay is lifted.

## V.    CONCLUSION

Since Lynda Loyko and ProMedica Senior Care are not parties to the Agreement, the

Court denies the Motion to Compel as to Counts III and V.  Plaintiff's procedural

unconscionability challenge fails because the Agreement's delegation provision expressly

reserves disputes concerning enforceability to the arbitrators.  Accordingly, the Court will

compel arbitration on Counts I, II, and IV and stay Counts III and V.  Finally, the Court will

defer ruling on the alternative Motion to Dismiss the stayed claims pending resolution of arbitration.

       A separate Order follows.

                                        BY THE COURT:

                                        */s/ Joseph F. Leeson, Jr.*_____
                                        JOSEPH F. LEESON, JR.
                                        United States District Judge